FILED
98 SEP 30 PM 12: 40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LURLENE G. MENCER,    }
                      }
    Plaintiff,      }
                      }
v.                    }    CASE NO. CV 94-B-1486-S
                      }
BIRMINGHAM CITY BOARD OF }
EDUCATION and CLEVELAND }
HAMMONDS, in his individual and }
official capacity,    }
                      }     ENTERED
    Defendants.     }     OCT 0 1 1998
                      }

## MEMORANDUM OPINION

    Currently before the Court is the Renewed Motion for Summary Judgment of defendants Birmingham Board of Education ("the Board") and Cleveland Hammonds ("Hammonds"). The present action arises out of claims by plaintiff Lurlene Mencer ("Mencer") that her former employer, the Board, and its superintendent, Hammonds, violated her rights under 42 U.S.C. § 2000e et. seq. ("Title VII"), 42 U.S.C. § 1981, 29 U.S.C. § 621 et seq. (the "ADEA"), and the Equal Protection and Due Process Clause of the Fourteenth Amendment as it is enforced under 42 U.S.C. § 1983. Mencer contends that the Board, pursuant to the recommendation of Hammonds, failed to promote her to two available principalships in the Birmingham school system on the basis of her race (African-American), age (fifty-four), and sex. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the defendants' Motion is due to be granted.

79

## FACTUAL SUMMARY

On June 10, 1992, a vacancy was posted in the Birmingham Schools for the positions of Principal at Gibson and Minor Elementary Schools. (Hammonds Aff. ¶ 2). Lurlene Mencer, an African-American female, applied for both positions. (Mencer Dep. at 205-07). A screening committee subsequently interviewed thirty applicants and recommended five of those applicants to Dr. Cleveland Hammonds (African-American male), superintendent of the Birmingham City Schools, for additional interviews. (Hammonds Dep. at 81, Tab A, Exh. 2, Exh. 3). The five were Mencer, David Porter (African-American male), Ken Walker (white male), Randle Key (African-American male), and Constance Moore (African-American female). (Hammonds Dep. at 83, Exh. 2, Exh.3). Hammonds selected Walker and Porter as the candidates most qualified for the positions at Gibson and Minor respectively. (Mencer Dep. at 238-39).

In the interim, the principal at Baker Elementary, Ronnie McFarling (white male), had requested a transfer to Gibson. (Mencer Dep. at 240). Therefore, when Hammonds reported to the Board, he recommended that McFarling be transferred to Gibson, that Walker be promoted to the vacant principalship at Baker (rather than Gibson as originally intended), and that Porter be promoted to principal at Minor. (Hammonds Dep. at 99-102). The Board accepted Hammond's recommendation, and the appointments were made. (Hammonds Aff. ¶ 4). By letter dated November 19, 1992, Mencer resigned from the position of assistant principal at Smith Middle School and is no longer employed by the Birmingham School System. (Mencer Dep. at 271).

It is undisputed that all of the successful applicants met the minimum qualifications for their positions as posted in the original vacancy notice; nor is it disputed that Mencer was qualified for the positions. Mencer contends that Hammonds's and the Board's failure to

2

promote her was discriminatory. For evidence to support this claim, Mencer has pointed to two statements. The first is a comment that Hammonds made during an interview with Mencer in 1990, shortly before he appointed Mencer to a temporary assistant principalship. (Mencer Dep. at 246-48). Mencer alleges that Hammonds stated "we need more male principals" and that he coupled this comment with one regarding the need for discipline in the school system. (*Id.*) Mencer also points to a letter that Hammonds sent to the EEOC in response to an EEOC investigator's queries about the large number of African-American principals in the Birmingham school system. (Plaintiff's Exh. 25). Hammonds wrote: "When we reviewed our list of principals, you noted that we have few white principals. We are trying to maintain the present ratio of black and white. The former principals of Baker and Gibson were white." (*Id.*).

Mencer also alleges, as evidence of discrimination, that she was more qualified than the two applicants who were chosen for the vacant principalships. In the course of her employment with the Birmingham School System, Mencer served as teacher, assistant principal, and interim principal. (Plaintiff's Exh. 10, 12, 13). Her educational background includes B.S., M.A., and A.A. degrees. (Plaintiff's Exh. 1). Furthermore, Mencer cites numerous recommendations she received, praising her performance in all of her prior positions. (Plaintiff's Exh. 8). While Walker has been an athletic coach and assistant principal, he never served as an interim principal. (Plaintiff's Exh. 16, 19). Walker possessed a B.S. and Master's degree, but not an A.A. degree. (Plaintiff's Exh. 18). Porter has served in the Birmingham school system as a teacher and an assistant principal, but not as an interim principal. (Plaintiff's Exh. 20, 21). Plaintiff also points to the fact that Porter received an evaluation stating that he did not seem to care for the students. (Plaintiff's Exh. 22).

The defendants point to questions which were raised about Mencer's record as interim principal. Dr. Larry Contri, an area assistant superintendent of the Birmingham Board of Education, had supervisory authority over Arrington Middle School when the plaintiff served there as interim principal. (Hammonds Aff. at 4). Dr. Contri testified that Mencer did not adequately handle the interim principal position at Arrington and that she experienced problems with parents, students, and staff members during her tenure. (Contri Dep. at 32-33, 38-39, 58-59). In making his decision as to who to recommend for the vacant principalships, Hammonds relied on Dr. Contri's assessment. (Hammonds Aff. at 4).

Hammonds testified that he based his recommendation of Walker upon his experience as an assistant principal, his excellent record in that regard, letters of reference from parents who observed his teaching, his administrative abilities, and his even temperament and organizational abilities exhibited in his interview. (Hammonds Aff. at 3, 4). Hammonds stated that he recommended Porter for the principalship at Minor Elementary School based upon his excellent record as an assistant principal, his record as a teacher, the recommendations of his peers, and his interview which revealed he was strong in discipline and possessed excellent administrative skills. (Hammonds Aff. at 4).

Mencer commenced this action against the Board on June 21, 1994. She alleged that the Board had violated her rights under Title VII, 42 U.S.C. § 1981, and the ADEA, by failing to promote her to an available principalship in the Birmingham school system. Mencer claimed that the Board discriminated against her on the basis of her race, age (fifty-four), and sex. She subsequently amended her complaint to add a claim that such discrimination violated both the Equal Protection and the Due Process Clause of the Fourteenth Amendment, and sought legal and

equitable relief under 42 U.S.C. § 1983. At the same time, Mencer obtained leave to add the Superintendent, Hammonds, as a party defendant in both his official and individual capacities with respect to each of the claims Mencer asserted against the Board.[1]

After the parties joined issue, the Board and Hammonds jointly moved for summary judgment on all of Mencer's claims. The Board's portion of the motion argued that all of Mencer's claims of discrimination failed for want of evidence of discrimination on the basis of race, sex, or age. Hammonds argued that the doctrine of qualified immunity protected him from liability for money damages with respect to Mencer's claim under the Equal Protection Clause. Chief District Judge Pointer granted the motion in part, dismissing the ADEA and substantive due process claims, and denied it with respect to Mencer's remaining claims.

Hammonds immediately appealed to the Eleventh Circuit the court's failure to grant him qualified immunity on plaintiff's Section 1983 claim based on the Equal Protection clause. The Eleventh Circuit reversed the district court and held that Hammonds was entitled to qualified immunity because there was not sufficient evidence in the record to support a finding that Hammonds intended to discriminate against Mencer on the basis of her race or gender, and that therefore Hammonds did not violate clearly established constitutional rights. *Mencer v. Hammonds*, 134 F.3d 1066, 1071 (11th Cir. 1998). In the meantime, this case was transferred from Chief Judge Pointer's court to this court.[2] After the Eleventh Circuit rendered its decision,

---

[1] Mencer also added an allegation that the Board and the Superintendent "continuously passed over the plaintiff for principalship positions since 1979."

[2] At the request of the parties, this case was stayed pending a resolution of Dr. Hammonds's interlocutory appeal.

5

the defendants filed a Renewed Motion for Summary Judgment with this court.[3]

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

---

[3]The Renewed Motion for Summary Judgment was stayed pending a resolution of plaintiff's request that the Eleventh Circuit reconsider *en banc* the panel decision granting Dr. Hammonds qualified immunity. Once the Eleventh Circuit refused to reconsider its decision *en banc*, this court lifted the stay and proceeded to consider defendants' Renewed Motion for Summary Judgment.

## DISCUSSION

The law of the case doctrine mandates that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 618 (1983). The decision of an appellate court at an earlier stage of the same proceeding represents the law of the case. *Joshi v. Florida State Univ. Health Ctr.*, 763 F.2d 1227, 1231-32 (11th Cir. 1985). The law of the case doctrine requires that a prior appellate decision govern the district court or subsequent appeals court unless an exception to the doctrine applies. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1003 n.7 (11th Cir. 1997).

Yet, in order for the law of the case doctrine to apply, the issue contested must be the same issue that was contested on and decided by the former appeal. *Id.* In addressing the plaintiff's Equal Protection claim brought pursuant to Section 1983, the Eleventh Circuit held that:

> The two statements to which Mencer points are not related in any way to her particular case and are ultimately ambiguous. The alleged comment concerning a need for more male principals cannot support a finding of intent to discriminate against Mencer, as Hammonds promoted Mencer to assistant principal immediately after making the comment. The letter concerning a 'ratio' of white to black teachers was made in response to a suggestion that the Birmingham school system employed a disproportionate number of black officials. We see no way it could serve as a basis for a finding that Hammonds intended to discriminate against Mencer, who is black.
> There is nothing else in the record, taken in the light most favorable to the plaintiff, that would allow a reasonable jury to find that Hammonds intended to discriminate against Mencer on the basis of her sex or race.

*Mencer v. Hammonds*, 134 F.3d 1066, 1071 (11th Cir. 1998).

Each of the plaintiff's remaining claims, which allege race and sex discrimination, require proof that the defendants intentionally discriminated against the plaintiff.[4] The defendants thus argue that, pursuant to the law of the case doctrine, the Eleventh Circuit's holding mandates that neither of these statements by the plaintiff may be used in order to establish that Hammonds intentionally discriminated against Mencer on the basis of her race or gender. The plaintiff argues that intent to discriminate for the purposes of the Equal Protection Clause is different from the intent to discriminate for purposes of Title VII and Section 1981. Mencer contends that in order to prove an Equal Protection Clause violation, a plaintiff must demonstrate an intent to cause harm based on the protected classification, while Title VII and Section 1981 do not require a finding of invidious discrimination. Therefore, according to the plaintiff, the law of the case doctrine does not apply to the plaintiff's Title VII and Section 1981 claims because a different issue is being presented to the court.

Plaintiff's attempted distinction is without merit. Mencer cites the Supreme Court's decision in *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979), in support of her assertion that an Equal Protection Clause violation only occurs upon a finding of "invidious" intentional discrimination which differs from the requirement of intentional discrimination in

---

[4]It is important to note that under Alabama law, the Superintendent and the Board of Education act in concert when promoting a teacher. *See* Ala. Code § 16-12-16 (1995) (The city superintendent of schools shall nominate in writing for appointment by the city board of education all principals, teachers, supervisors, attendance officers, janitors and all other employees of the board and shall assign to them their positions, transfer them as the needs of the school require, [and] recommend them for promotion . . ."). Neither entity can promote a teacher without approval of the other. *See Vodantis v. Birmingham Bd. of Educ.*, 373 So.2d 320, 321 (Ala. 1979) (neither board nor superintendent can dismiss without action of the other); *Marsh v. Birmingham Bd. Of Educ.*, 349 So.2d 34, 35-36 (Ala. 1977) (city superintendent cannot employ, promote, or dismiss teachers without Board approval).

disparate treatment cases under Title VII.[5] In its analysis, the Court stated:

> When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionately adverse, a twofold inquiry is thus appropriate. The first question is whether the statutory classification is indeed neutral in the sense that it is not gender-based. . . . the second question is whether the adverse effect reflects invidious gender-based discrimination. In this second inquiry, impact provides an 'important starting point,' but purposeful discrimination is 'the condition which offends the Constitution.'

*Feeney*, 442 U.S. at 274 (citations omitted). In this context, it is clear that the Court equates "invidious" discrimination merely with purposeful discrimination. The Court uses the term "invidious" in order to contrast intentional or purposeful discrimination with policies which result in a discriminatory impact without having been adopted for a discriminatory purpose. Thus, the Court makes it clear through this language that only intentional or invidious discrimination violates the Equal Protection Clause, rather than policies or statutes which produce discriminatory results but were not designed with a discriminatory purpose.

Title VII law allows a plaintiff to prevail by use of two theories: disparate treatment and disparate impact. *Armstrong v. Flowers Hospital, Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). A plaintiff proceeding under a disparate treatment theory must prove that the defendant[s] intentionally discriminated against her. *Hazen Paper v. Biggins*, 507 U.S. 604, 609 (1993); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1520 (11th Cir. 1995). However, a plaintiff proceeding under a disparate impact theory must only prove that a facially neutral

---

[5]In *Feeney*, the state of Massachusetts passed a statute which gave preference to veterans for civil service positions. However, the effect of the statute was to give preference to males, even though the statute on its face was gender neutral, since over ninety-eight percent of those eligible under the statute were male.

9

practice disproportionately impacts a certain protected group. *Biggins*, 507 U.S. at 609; *Armstrong*, 33 F.3d at 1313.[6] In contrast, plaintiffs suing under the Equal Protection Clause or Section 1981 must prove intentional discrimination and thus may not prevail under a disparate impact theory. *See Feeney*, 442 U.S. at 274; *Powers v. Alabama Dept. of Educ.*, 854 F.2d 1285, 1288 n.4 (11th Cir. 1988). Therefore, when a court uses the term "invidious" discrimination in the context of Equal Protection cases, it is merely demonstrating that plaintiffs must prove invidious or intentional discrimination, instead of merely showing that a particular practice has a disparate impact.

When a court is analyzing a claim brought under Title VII, Section 1981, or Section 1983, the phrase "intent to discriminate" has the same meaning. The Eleventh Circuit demonstrated this point in stating:

> Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also clams liability under sections 1981 and 1983, the legal elements of the claims are identical. A plaintiff asserting either claim must prove intentional discrimination. Therefore, we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims.

*Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985); *see also Johnson v. Waters*, 970 F. Supp. 991, 995 n.6 (M.D. Ala. 1997). Therefore, since the Eleventh Circuit has found that a reasonable jury could not find that either of Hammonds's two aforementioned statements indicate any intent to discriminate against Mencer based on her race or gender, this is the law of the case and it applies to all of Mencer's causes of action, not just to the Equal Protection claim.

---

[6]"Although a plaintiff must establish intentional discrimination to prevail on a claim of disparate treatment, a claim of disparate impact may succeed without any evidence whatsoever of intentional discrimination." *Armstrong*, 33 F.3d at 1313.

10

Mencer claims that the defendants discriminated against her in violation of Title VII,[7] Section 1981,[8] and Section 1983 (Equal Protection).[9] A plaintiff alleging illegal discrimination under Title VII may establish a genuine dispute as to his claim in three ways: 1) by presenting direct evidence of discriminatory intent, *see Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998); 2) by meeting the three-step test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or 3) by demonstrating through statistics a pattern of discrimination,[10] *See Carter, supra*, at 642 n.5 (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984).

Mencer claims that the Board discriminated against her on the basis of both her race and her gender. She argues that this discrimination prevented her from being promoted to principalships at two different schools where Walker and Porter were ultimately hired. Besides the two aforementioned statements made by Hammonds, Mencer's only other proof of discrimination is her claim that she was better qualified than both Walker and Porter. Mencer

---

[7] Suits against public officials in their individual capacities are inappropriate under Title VII since those individuals are not deemed to be an employer of the plaintiff. *See Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995). Any claim against a public officials under Title VII in his official capacity is due to be dismissed because it is considered redundant. *Bahadirili v. Domino's Pizza*, 873 F. Supp. 1528, 1534 (M.D. Ala. 1995).

[8] Plaintiff conceded that gender discrimination is not actionable under Section 1981. (Pl. Br. in Opp. to Renewed M. for Sum. J. at p. 21). In addition, plaintiff "does not oppose dismissal of the § 1981 [claim] against the superintendent in his official capacity" because it is "redundant." (*Id.* at p. 22).

[9] Plaintiff "does not oppose dismissal of the equal protection clause claim against the board and the superintendent in his official capacity." (Pl. Br. in Opp. to Renewed M. for Sum. J. at p. 22).

[10] Mencer has presented no statistical evidence to support her claim that defendants discriminated against her based on her race or gender.

11

points out that she had many recommendations praising her performance and had previously served as an interim principal, assistant principal, and key teacher and facilitator. Her education included B.S., M.A., and an A.A. degrees. Mencer points out that while Walker had served as assistant principal, he never served as an interim principal. Walker had B.S. and M.A. degrees. Porter also had served as a teacher and an assistant principal, but never as an interim principal. Porter had been given one evaluation stating that he did not seem to care for his students.

### A. Walker's Promotion to Principal at Baker

#### 1. Gender Claim

Mencer claims that defendants discriminated against her on the basis of her gender when the Board selected Walker to fill the position of principal at Baker Elementary School. In support of her gender discrimination claim, Mencer cites Hammonds's statement that more male principals are needed to maintain discipline. The Eleventh Circuit has recognized that "statements by decisionmakers unrelated to the decisional process itself" do not constitute direct evidence "requiring the employer to prove that its hiring or professional decisions were based on legitimate criteria."[11] *Equal Employment Opportunity Comm'n v. Alton Packaging Corp.*, 901 F.2d 920,

---

[11] "Direct evidence is '[e]vidence which if believed, proves existence of fact in issue *without inference or presumption.*'" *Rollins v. Techsouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987). Although it may seem reasonable to infer that a person who makes a discriminatory remark outside of the decisional process will conduct business in a discriminatory manner, such a conclusion requires an inference. Therefore, comments made completely outside of the decisional process do not constitute direct evidence that the speaker discriminated in making the employment decision at issue. *Compare Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930-31 (11th Cir. 1995) (holding that employer's statement that women were not tough enough to do the job constituted direct evidence of sex discrimination) *with Equal Employment Opportunity Comm'n v. Alton Packaging Corp.*, 901 F.2d 920, 923-24 (11th Cir. 1990) (holding that decisionmaker's statement to black employee that "you people can't do a --------- thing right" did not constitute direct evidence of discrimination).

924 (11th Cir. 1990) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989) (O'Connor, J., concurring)); *see also Alphin v. Sears Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991).

Because Hammonds's statement was not made in the context of the decisional process at issue, it does not constitute direct evidence of gender discrimination. Rather, Hammonds's statement and Mencer's alleged superior qualifications constitute circumstantial evidence of discrimination. *See Ross v. Rhodes Furniture* Inc., 146 F.3d 1286, 1291-92 (11th Cir. 1998). Because Mencer relies on circumstantial evidence, the court will evaluate her case under the framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). The burden of production then shifts to the employer, who must respond with a legitimate, nondiscriminatory reason for its actions. *Id.* at 1528. Once the employer satisfies its burden of production, the plaintiff, in order to prevail, must establish that the employer's articulated legitimate, nondiscriminatory reason was pretextual and that the unlawful discrimination was in fact the cause of the adverse employment action. *Id.* at 1528-29. Despite the burden shifts in the *McDonnell Douglas* test, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *accord Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997).

In order to demonstrate a prima facie case for discriminatory failure to promote, a plaintiff must show that: 1) she is a member of a protected class; 2) she was qualified for and applied for the promotion; 3) she was rejected in spite of her qualifications; and 4) the individual who

13

received the promotion is not in a protected group and had lesser or equal qualifications. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998). Mencer has established a prima facie case of gender discrimination. Mencer is a female, while Walker, who received the promotion is a male. She is also arguably equal or more qualified that Walker for the position.

The defendants articulated a legitimate nondiscriminatory reason for the decision not to promote Mencer: Hammonds believed that Walker was the most qualified and best suited candidate for the job. Hammonds based this belief on information he received from Dr. Larry Contri, an area assistant superintendent of the Birmingham Board of Education, that parents, students, and staff had complained about Mencer's performance as interim principal at Arrington Middle School. Furthermore, Hammonds testified that he based his recommendation of Walker upon his experience as an assistant principal, his excellent record in that regard, letters of reference from parents who observed his teaching, his administrative abilities, and his even temperament and organizational abilities exhibited in his interview.

In order to establish that this reason was pretext for gender discrimination, Mencer points to a comment that Hammonds made during an interview with Mencer in 1990, shortly before he appointed Mencer to a temporary assistant principalship. Mencer alleges that Hammonds stated "we need more male principals" and that he coupled this comment with one regarding the need for discipline in the school system. (Mencer Dep. at 246-48). The Eleventh Circuit held that this comment "cannot support a finding of intent to discriminate against Mencer, as Hammonds promoted Mencer to assistant principal immediately after making the comment." *Mencer v. Hammonds*, 134 F.3d 1066, 1071 (11th Cir. 1998). If the court were writing on a clean slate, it

14

would find the statement attributed to Hammonds to be circumstantial evidence of discrimination. In this court's opinion, the fact that Hammonds promoted the plaintiff to an assistant principal position immediately after making the comment does not mean he could not discriminate against her *later* on the basis of her gender when deciding who should be promoted to a principal's job, particularly if he believed, as the statement attributed to him suggests, that the school system needed more male principals and that males could better handle discipline in the schools.

Assuming for the purposes of this opinion that Hammonds's statement could constitute circumstantial evidence of gender discrimination, the court must consider this evidence along with other evidence to determine whether it might lead a reasonable jury to disbelieve Hammonds's proffered reason for not promoting Mencer, and to believe that gender discrimination was in fact the true reason. Here, Hammonds's statements, coupled with all the other evidence in the record, (including Mencer's argument that she is better qualified than Walker), could not lead a reasonable jury to disbelieve the proffered reason for the decision. In addition, pursuant to the law of the case doctrine, Hammonds's statement cannot support a finding of intent to discriminate.[12] Thus, all this court is left with is Mencer's alleged superior qualifications. This evidence is not enough to lead a reasonable jury to disbelieve Hammonds's proffered reasons for his decision.

### 2. Race Claim

Mencer also alleges that Hammonds discriminated on the basis of race in promoting Walker to the position of principal at Baker. In support of this claim, Mencer points to a letter

---

[12] As noted above, the court agrees that the statement does not constitute direct eivdence of discrimination.

that Hammonds sent to the Equal Employment Opportunity Commission ("EEOC") in response to an EEOC investigator's queries about the large number of African-American principals in the Birmingham school system. Hammonds wrote: "When we reviewed our list of principals, you noted that we have few white principals. We are trying to maintain the present ratio of black and white. The former principals of Baker and Gibson were white." (Plaintiff's Exh. 25). In this letter Hammonds essentially said that he was trying to keep white principals at schools which previously had white principals. Baker, where Walker was hired, was one of the schools which had previously had a white principal. Concerning this letter, the Eleventh Circuit stated "[w]e see no way it could serve as a basis for finding that Hammonds intended to discriminate against Mencer, who is black." *Mencer v. Hammonds*, 134 F.3d 1066, 1071 (11th Cir. 1998).

Again, if the court were writing on a clean slate, it would find the statement to be direct evidence of racial discrimination. Direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987). Direct evidence of discrimination is found "where actions or statements of an employer reflect [ ] a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee." *Merritt*, 120 F.3d at 1189 (quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990). Thus, since there is a direct correlation between Hammonds's statement and the decision to hire a white principal at Baker, in this court's opinion this statement constitutes direct evidence of racial discrimination.

Because Mencer has produced direct evidence of discrimination, the defendants would only be able to rebut this by "proving by a preponderance of the evidence that the same decision

16

would have been reached absent the presence of that factor." *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 774 (11th Cir. 1982). There is nothing in the record which demonstrates that the defendants would be able to meet this burden. Therefore, in the absence of the Eleventh Circuit's opinion, this court would conclude that Hammonds's statement to the EEOC, coupled with Mencer's arguments that she more qualified, would be enough to create a genuine issue of material fact on plaintiff's race discrimination claims under Title VII and Section 1981. However, the law of the case doctrine dictates that this court not consider Hammonds's statement to the EEOC as evidence of his intent to discriminate against Mencer on the basis of her race. Thus, all this court is left with is plaintiff's allegation that she was more qualified. Mencer's own opinions about her qualifications are not enough to cause a reasonable jury to conclude that defendants' stated nondiscriminatory reasons for the decision were a pretext for illegal racial discrimination. *See McCarthney v. Griffin-Spalding County Bd. of Educ.*, 791 F.2d 1549, 1552 (11th Cir. 1986) ("[e]ven assuming that the evidence demonstrated [plaintiff] was the most qualified person for the available positions, this does not of itself refute Dr. Green's testimony that [plaintiff's] gender played no role in his decision."). Thus, defendants are due summary judgment on Mencer's race discrimination claim.

### B. Porter's Promotion to Principalship at Minor

Mencer also claims that she was discriminated against when Porter was named to the principalship at Minor Elementary School instead of her. As previously mentioned, Mencer does make out a prima facie case of gender discrimination. Mencer is a female, while Porter, who received the promotion is a male. She is also arguably equal or more qualified that Porter for the position.

The defendants articulated a legitimate nondiscriminatory reason for the decision not to promote Mencer: Hammonds believed that Porter was the most qualified and best suited candidate for the job. Hammonds based this belief on information he received from Dr. Larry Contri, an area assistant superintendent of the Birmingham Board of Education, that parents, students, and staff had complained about Mencer's performance as interim principal at Arrington Middle School. Furthermore, Hammonds stated that he recommended Porter for the principalship at Minor Elementary School based upon his excellent record as an assistant principal, his record as a teacher, the recommendations of his peers, and his interview which revealed he was strong in discipline and possessed excellent administrative skills.

In order to establish pretext, Mencer points to the comment made by Hammonds concerning the need for more male principals in order to establish better discipline in the schools and to her claim of superior qualifications. As noted above, the court considers the statements of Hammonds to be circumstantial evidence of discrimination. However, even if this court considered both Hammonds's statement and Mencer's alleged superior qualifications, this evidence is insufficient to establish that defendants' articulated reasons are pretext for illegal gender discrimination. Thus, defendants' motion for summary judgment on plaintiff's claim of gender discrimination as to the position awarded to Porter is due to be granted.

## CONCLUSION

The court concludes that defendants' Renewed Motion for Summary Judgment is due to be granted. All claims against the Birmingham City Board of Education, the superintendent in his official capacity, and Dr. Cleveland Hammonds will be dismissed with prejudice. An order in

accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 30th day of September 1998

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge